

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| PAULA WHITCOMB, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:09-CV-00200-LSC |
| | ] | |
| SUMTER COUNTY BOARD OF | ] | |
| EDUCATION, and FRED D. PRIMM, | ] | |
| JR., individually and in his official | ] | |
| capacity of Superintendent of the | ] | |
| Sumter County Board of Education, | ] | |
| | ] | |
| Defendants. | ] | |
| | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration Defendants' Motion to Dismiss.  (Doc.

8.)  This motion was filed on March 2, 2009.  The motion has been briefed

by the parties and is ripe for review.

II.    Procedural and Factual Background.[1]

---

[1]  For the purposes of this opinion, the facts are accepted as alleged in the complaint.  Recitation of the facts alleged by the plaintiff in this opinion is not to be construed as a verification that the allegations are true.

Plaintiff Paula Whitcomb ("Whitcomb" or "Plaintiff") is a white female who was hired by the Sumter County Board of Education ("Board" or "Defendants") in 1990 as a math teacher at Sumter County High School ("SCHS"). According to Plaintiff's complaint, she has repeatedly attempted to attain a position as an Assistant Principle at SCHS throughout her tenure at the school. These efforts have been consistently rebuffed. Plaintiff claims that in many instances openings for the position have not been posted, and that these openings have been routinely filled by African American candidates who are less qualified than Plaintiff. On March 18, 2008, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination against the Board alleging racial discrimination regarding her continued denial of promotions.[2] On August 7, 2008, Plaintiff filed a second charge of employment discrimination with the EEOC for unlawful retaliation in connection with her charge of discrimination. Plaintiff filed this action on February 2, 2009, alleging race discrimination and retaliation in violation of Title VII, 42 U.S.C. §2000(e) ("Title VII"),

---

[2] In the Complaint, Plaintiff also refers to February 27, 2008 as the date the original complaint was filed. In the response to the Motion to Dismiss, however, Plaintiff confirms that the original filing was done on March 18, 2008.

violations of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1981 ("1981") against Defendant Fred D. Primm, Jr. ("Primm" or "Defendants"), individually and in his official capacity, and violations of the Equal Protection Clause of the Fourteenth Amendment and 1981 against the Board.  Defendants have moved to dismiss the following claims: 1) certain Title VII, 1981, and 42 U.S.C. § 1983 ("1983") claims as time barred; 2) all Title VII claims against Primm, whether in his individual or official capacity, and all official capacity claims whether asserted under Title VII, 1981, or 1983; 3) Plaintiff's request for injunctive relief; 4) Plaintiff's 1983 Equal Protection claims of discrimination and retaliation; and 5) requests for punitive damages sought against the Board and Primm in his official capacity.  Plaintiff has conceded several of the points argued in Defendants' motion to dismiss.  Plaintiff concedes that, to the extent the Lilly Ledbetter Fair Pay Act of 2009 ("FPA") does not apply, all Title VII claims that fall beyond the 180 day window preceding the filing of her March 18, 2008 EEOC charge are time barred.  Plaintiff further concedes that all 1983 Equal Protection claims that fall outside of the two years preceding the filing of her complaint and all 1981 claims outside of the four years preceding the

filing of her complaint are time barred.  Plaintiff states that she neither asserted Title VII claims against Primm in his individual capacity nor sought punitive damages against him in his official capacity. Finally, Plaintiff agrees that the Board is not subject to punitive damages.

As such, the issues that remain in contention are the applicability of the FPA, Plaintiff's Title VII and 1983 Equal Protection claims against Primm in his official capacity, Plaintiff's request for injunctive relief, and Plaintiff's 1983 Equal Protection claims of discrimination and retaliation.

III.    Standard.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted.  To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint

are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).[3]  The plaintiff must plead "enough facts to state a claim that is plausible on its face."  *Id.* at 1974.

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'"  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  All "reasonable inferences" are drawn in favor of the plaintiff.  *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).  "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."  *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, *Ala.*, 268 F.3d 1014, 1036 n.16 (11th

---

[3] The Supreme Court in *Bell Atl. Corp. v. Twombly* abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson. See Bell Atl. Corp.*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. 41, 45-46 (1957)).  The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp.*, 127 S. Ct. at 1969.

Cir. 2001)).  Furthermore, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory."  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

IV.    Analysis.

    A.    FPA and Time Limitations on Plaintiff's Title VII Claims.

Plaintiff concedes that under prior rulings, all Title VII claims that fall outside of the 180 day statutory period preceding the filing of her March 18, 2008 EEOC charge are time barred.  Plaintiff argues, however, that this Court should apply the recently enacted FPA to this matter.

That the FPA works a change in Title VII is clear, but the extent to which it does so is an open question.  The FPA was passed by Congress in response to the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Company*, 550 U.S. 618 (2007), and the contours of the FPA cannot be defined without a detailed understanding of *Ledbetter*.  In *Ledbetter*, the plaintiff was a woman who had worked in a Goodyear plant in Gadsden, Alabama, for 19 years prior to her retirement.  *Id.* at 621.  During that time,

the level of pay for salaried employees was determined based on their supervisors' evaluation of their performance. Ledbetter was able to show that "several supervisors had given her poor evaluations because of her sex, that as a result of these evaluations her pay was not increased as much as it would have been if she had been evaluated fairly, and that these past pay decisions continued to affect the amount of her pay throughout her employment." *Id.* at 622. Ledbetter argued that even though the discriminatory evaluations themselves were beyond the statutory time period, each paycheck she was issued related back to those earlier discriminatory compensation decisions and was itself a separate act of discrimination. *Id.* at 624.

The Court began its discussion by "stress[ing] the need to identify with care the specific employment practice that is at issue." *Id.* at 624. The Court then conducted an exhaustive examination of precedent, reiterating prior holdings that the charging time period under Title VII begins to run "from the time when the discrete act of alleged intentional discrimination occurred, not from the date when the effects of this practice were felt." *Id.* at 627 (citations omitted). The Court then concluded that "the logic of

our prior cases is fully applicable to pay cases." *Id.* at 637.  Thus, the Court held that "Ledbetter's arguments here—that the paychecks that she received during the charging period and the 1998 raise denial each violated Title VII and triggered a new EEOC charging period—cannot be reconciled with [precedent]." *Id.* at 628.  Therefore, "the paychecks that were issued to her during the 180 days prior to the filing of her EEOC charge do not provide a basis for overcoming" her failure to file at the time of the initial discrimination.  *Id.* at 629.  That discrimination became, then, "merely an unfortunate event in history which has no present legal consequences."  *Id.* (citations omitted).

Congress reacted to this decision with the passage of the FPA on January 22, 2009.[4]  Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 2009 S. 181 (2009).  Title VII generally requires that a charge should be filed "within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ."  42 U.S.C. § 2000e-5(e)(1).  Courts have ruled, as the Supreme Court did in *Ledbetter*, that the clock begins to run for Title

---

[4] The FPA is expressly retroactive.  *See* 42 U.S.C. § 2000e-5 (noting that the FPA is "effective as if enacted on 5/28/2007").

VII violations whenever the discrete act of discrimination occurs, and that the aggrieved party "must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *AMTRAK v. Morgan*, 536 U.S. 101, 110 (2002). The Court has taken this hard line under a belief that Congress, "[b]y choosing what are obviously quite short deadlines, . . . clearly intended to encourage the prompt processing of all charges of employment discrimination." *Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980).

Through the passage of the FPA, Congress has blunted the harsh effect of the time limit contained in Title VII as it applies to discrimination in compensation. In relevant part, the FPA amends Title VII, specifically 42 U.S.C. § 2000e-5(e), by adding the following paragraphs:

> (3)    (A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

> (B) In addition to any relief authorized by section 1977A of the Revised Statutes (42 U.S.C. 1981a), liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

42 U.S.C. § 2000e-5(e)(3)(A-B).

The FPA therefore enables plaintiffs to sue for discrimination when "an individual is affected by application of a discriminatory compensation decision or other practice," of which the FPA explicitly categorizes the payment of wages as an instance. 42 U.S.C. § 2000e-5(e)(3)(A). Thus, even though the discriminatory compensation decision or other practice may have occurred well in the past, as long as an EEOC complaint is filed within 180 days of payment of compensation resulting in whole or in part from that decision or practice, the complaint is timely.

Plaintiff has alleged that the FPA should apply to her claim because she was denied promotion and corresponding salary increases for discriminatory reasons, thus resulting in her receipt of lower wages. This

interpretation posits that the "other practice" language of the FPA allows plaintiffs to sue for any discriminatory act that affects compensation, even if the discriminatory act itself would ordinarily be time barred.  For their part, the defense contends that only discriminatory acts which are themselves compensatory, as opposed to having an ancillary effect on compensation, are covered by the FPA.  Given its recent enactment, it is not surprising that judicial treatment of the FPA is limited.  It is evident to this Court, however, that this sparse landscape will soon be filled as there are strong arguments on both sides of this debate. These arguments support diametrically opposed positions; the FPA is either narrowly focused on compensation or it is a broad reshaping of Title VII that works a revolution in that jurisprudence.

The Court notes that the Eleventh Circuit has not yet held forth on the effect of the FPA on the fairly sophisticated jurisprudence that has grown up around Title VII claims.  Furthermore, it is apparent to this Court that this issue is better suited for disposition at summary judgment.  Ruling that the FPA bars some of Plaintiff's claims will not end this case.  In fact, it would not even dispose of all of Plaintiff's Title VII claims.  The Court

believes that it is better to refrain from dismissing potentially time-barred Title VII claims at this time.  The Court will instead wait for a later stage of litigation when the law and facts may be more clear.  *See Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981) ("Where the asserted theory of liability is extreme or even far fetched, the more important it is that the conceptual legal theories be explored and assayed in the light of actual facts, not a pleader's supposition") (citations omitted).  Therefore, Defendants' motion to dismiss Plaintiff's Title VII claims that fall outside of the 180 day statutory period preceding the filing of her March 18, 2008 EEOC charge is denied.

      B.     Plaintiff's Title VII and 1983 claims against Primm in his Official Capacity.

Defendants argue that the claims made against Primm in his official capacity as superintendent of the Board are due to be dismissed as redundant and improper.  It is well established that "suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent," and there is no need to bring official capacity actions against local government officials when the

government unit itself can be sued directly. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (noting that keeping both the official and the municipal unit in the case would be redundant and confusing to a jury). Boards of education are not arms of the state for purposes of the Eleventh Amendment, and therefore it is not necessary for Plaintiff to sue Primm in order to avail herself of the exception to that amendment under *Ex parte Young*, 209 U.S. 123 (1908). *See Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1511 (11th Cir. 1990) (holding that county boards of education are not arms of the state and therefore not entitled to Eleventh Amendment immunity). Defendants have conceded that, as Plaintiff has stated a claim against the Board, injunctive relief is available to her to the extent she can establish the truth of her claims.[5] As the official capacity claims against Primm are redundant and better pressed against the Board itself, claims against him in his official capacity are due to be dismissed.

---

[5] This concession is made with the caveat that Defendants maintain that Plaintiff is seeking an unenforceable "obey the law" injunction that should not be granted. Defendants' contention is unavailing. Plaintiff has asked specifically for an injunction requiring Defendants to promote Plaintiff to the position she claims is due to her. Defendants' motion to dismiss Plaintiff's prayer for injunctive relief is therefore due to be denied.

C.  Plaintiff's 1983 Equal Protection Discrimination and Retaliation
Claims.

Defendants argue that Plaintiff's retaliation claims are not viable as
there is no right to be free from retaliation under the Equal Protection
Clause.[6]  In *Ratliff v. DeKalb County*, the Eleventh Circuit held, "The right
to be free from retaliation is clearly established as a *first amendment* right
and as a *statutory* right under Title VII; but no clearly established right
exists under the equal protection clause to be free from retaliation."
*Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995); *Bernheim v.
Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("[W]e know of no court that has
recognized a claim under the equal protection clause for retaliation
following complaints of racial discrimination.").   Plaintiff's claims for
retaliation under the Equal Protection Clause are therefore due to be
dismissed.   Plaintiff's right to be free from retaliation is sufficiently
redressed via her Title VII claims.

To the extent they seek dismissal of all equal protection claims,
Defendants reach too far.  To establish an Equal Protection claim, Plaintiff

---

[6] Plaintiff also asserts a cause of action for retaliation under Title VII.  That cause
of action is not in dispute.

must show that she was similarly situated with persons who received more favorable treatment and that this discriminatory treatment was based on a constitutionally protected interest.  *See Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001).  Plaintiff has sufficiently argued these elements in her complaint.  *See, e.g.,* Doc. 1, p. 16, ¶¶ 119-120.  Therefore, Defendants' motion to dismiss is due to be denied to the extent it seeks relief as to Equal Protection Clause claims other than those premised on retaliation.

V.     Conclusion.

For the reasons stated above, Defendants' motion to dismiss will be granted as to Plaintiff's 1983 Equal Protection claim for retaliation, all 1983 claims that fall outside of the two years preceding the filing of Plaintiff's complaint, all 1981 claims that fall outside of the four years preceding the filing of Plaintiff's complaint, all Title VII claims against Primm, all 1983 claims against Primm in his official capacity, and all requests for punitive damages to the extent they were asserted against the Board or Primm in his official capacity.  Defendants' motion to dismiss will be denied as to all Title VII claims that fall beyond the 180 day window preceding the filing of the March 18, 2008 EEOC charge, Plaintiff's request for declaratory and

injunctive relief, and to the extent it seeks dismissal of 1983 Equal Protection claims other than those premised on retaliation.    A separate order will be entered.

Done this 25th day of January 2010.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671