FILED
2011 Jan-14  AM 11:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| PAULA WHITCOMB, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:09-cv-00200-LSC |
| | ] | |
| SUMTER COUNTY BOARD | ] | |
| OF EDUCATION and FRED | ] | |
| D. PRIMM, JR., individually and | ] | |
| in his official capacity as | ] | |
| Superintendent of the Sumter | ] | |
| County Board of Education, | ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

Pending is Plaintiff Paula Whitcomb's motion for summary judgment on all claims filed by Defendants Sumter County Board of Education ("Board") and Fred Primm on October 1, 2010. (Doc. 33.)  Whitcomb, a mathematics teacher at Sumter County High School ("SCHS"), claims that racial discrimination and retaliatory animus prevented her promotion to several administrative positions over several school years.  (Doc. 1 at 10-19.)

Whitcomb thus seeks relief against Defendants under 42 U.S.C. § 2000e, *et seq.*  Whitcomb also claims that this discrimination and retaliation violated the Equal Protection Clause of the Fourteenth Amendment and asserts counts under 42 U.S.C. § 1981, and 42 U.S.C. § 1983. (Doc. 1 at 13.)  The issues raised in Defendants' motion for summary judgment have been briefed by both parties and are now ripe for decision.  After considering the legal arguments and evidence presented, this Court partially grants Defendants' motion for summary judgment.

II.   Facts.[1]

A Caucasian woman, Whitcomb teaches in a school district where the majority of personnel are African-American.  Whitcomb has taught in the math department of SCHS since 1990, serving during that period on the testing and grant writing committees and as volleyball coach.  She received her Masters in Education Administration and her education administrator

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

certificate in 2002.  In addition, she has held her Board-mandated teaching certification since 1991.

The Board sets minimum requirements to serve as an assistant principal and as a principal.  An assistant principal must have, at least, a teacher's certification, a masters degree in progress, a valid certification as an administrator or supervisor and three years of teaching experience.  A principal must have, at least, a master's degree, a certification in educational leadership, and three years' teaching experience.

Subject to these requirements and others, Defendant Primm, the county superintendent, has "complete freedom to organize reorganize and arrange the administration and supervisory staff of the district in a manner which in this [sic] judgment best serves the schools of the District, subject to Board approval." (Doc. 42-4 at 4.)  He is "responsible[] for selection, placement, and transfer of personnel, subject to Board approval." (Doc. 42-4 at 4.)  In practice, Primm would defer to principals' decisions on hiring their own assistants.  Primm would then recommend that decision for Board approval.

At SCHS, Ellis Levy served as principal for twenty-five years, retiring

in July of 2008.  Because SCHS did not qualify for a full-time assistant principal, Levy assigned certain administrative tasks on a part-time basis to individuals referred to as assistant principals.  Those individuals received about $2000 in supplemental pay.  For the 2005-2006 school year, Levy chose Aslean Jones, an English teacher with an administrative certification and a masters in progress, to serve as assistant principal.

For the 2006-2007 school year, the Board allocated local funds for a full-time assistant principal.  Though the Board posted the open assistant principal position at SCHS, Levy did not receive any job postings from the Board.  Levy chose Rita Ertha, a previous assistant principal who held both a masters and the administrative certification.

During 2007-2008, Ertha served as interim principal at a junior high school, due to an ongoing employment dispute.  But because Primm anticipated moving Ertha back to SCHS when the dispute ended, no one replaced her as SCHS assistant principal.

In January 2008, Principal Levy took medical leave for three weeks. Levy asked Alonzo Sledge, the basketball coach, to handle disciplinary issues during his absence because Sledge had previously assisted him. Sledge did

not hold an administrative certificate and received no supplemental pay for handling any issues during Levy's absence.

In March, Whitcomb filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging, in part, that Sledge's appointment and the open assistant principal position resulted from Defendants' discriminating against her.

For the 2008-2009 school year, the Board had to fill, among other positions, Principal Levy's position (due to his retirement) and two assistant principal positions, SCHS and Livingston High School ("LHS").

The Board posted open principal positions with a May 29, 2008 application due date.  Whitcomb applied for the SCHS position in a hand-delivered May 28 letter.  She received an interview on June 2, 2008. Whitcomb interviewed before a panel of nine African-Americans.  Each interviewer graded the interviewee on a scale of one to ten over ten questions: such as "What do you feel are your strong points as an administrator?" or "How would you describe a successful principal?"  (Doc 36-15 at 7.)  She achieved an average score of 69.6.  Defendants also interviewed twelve other people.  Among the later interviewees was Richard

Kelly, the person who later became SCHS principal.  When applying, Kelly submitted a May 29, 2008 letter stating that he "began to submit [his] application online.  However, before [he] could complete the process, it was after midnite [sic], and the postings closed."  (Doc. 42-4 at 78.)  Whitcomb suggests that Kelly applied after the deadline, but the letter also states "my application has been confirmed as being posted on the Alabama Department of Education website."  (Doc. 42-4 at 78.)

In any event, Kelly had received his masters in 1984, had served as principal for a Mississippi middle school for fourteen years, and had begun working on a doctorate degree in 1999.  Kelly had no educational experience in Alabama however.  Because Defendants wanted to interview all the local applicants first, Kelly received a July 3, 2008 interview rather than a June interview.  Kelly, an African-American, interviewed before a panel of six people, one Caucasian and five African-Americans.  Kelly garnered an average score of 89.3.  Primm recommended Kelly for Board approval as the SCHS principal later in July 2008.

Before the Board posted any assistant principal vacancies on June 18, 2008, Whitcomb mailed a June 2, 2008 letter of intent as her "official letter

of application for the position of assistant principal at [SCHS]." (Doc. 42-4 at 25.) She stated that she had "taken the liberty of applying for the position even though it has not been placed upon the official Sumter County Board of Education website." (Doc. 42-4 at 25.)  After the posting, Melissa Woods and Cynthia Jemison applied for assistant principal positions, but did not apply to a specific school.  Woods interviewed for and received the assistant principal position at SCHS.  She had received her masters degree and administrative certificate in 2007.   And Jemison interviewed and received the assistant principal position at LHS.  Jemison had received her masters degree in 2008, and her administrative certification became effective July 1, 2008. (Doc. 42-8 at 19.)

After failing to receive a position as assistant principal or principal, Whitcomb filed a second EEOC charge on August 7, 2008, asserting continuing discrimination and new charges that Defendants retaliated for her first EEOC charge by denying her one of the 2008-2009 administrative positions.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) "requires the

nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

Defendants make seven arguments; some overlap: (1) Title VII prevents Whitcomb from asserting some of her earlier claims;[2] (2) Whitcomb fails to make her *prima facie* case because she never applied for several of the assistant principal positions; (3) even if Whitcomb can make her case, Defendants had legitimate, non-discriminatory reasons for not promoting

---

[2] Even if this Court decided that question, the Court would still have to determine whether the underlying discrimination occurred under § 1983 and § 1981. Discrimination claims brought under the Equal Protection Clause (via § 1983), § 1981, or Title VII "employ the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).  Thus, this Court need not decide whether a portion of her Title VII claims are time-barred.

her; (4) Whitcomb fails to make her *prima facie* case because no connection

exists between her filing EEOC charges and Defendants' denying her an

assistant principal or principal position in 2008; (5) even if she could

establish a connection, Defendants had legitimate, non-discriminatory

reasons for not promoting her in 2008; (6) Whitcomb cannot assert § 1983

claims against the Board; and (7) Primm is due qualified immunity on all

Whitcomb's claims.   (Doc. 35 at 2.)  The Court addresses these arguments

in turn.

     A.     Whitcomb's Racial Discrimination *Prima Facie* Case.

Defendants argue that Whitcomb cannot establish the elements of a

failure-to-promote discrimination claim.   Discrimination claims brought

under the Equal Protection Clause (via § 1983), § 1981, or Title VII "employ

the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20

(11th Cir. 2009).  That framework requires a plaintiff to demonstrate "that,

more probably than not, the employer took an adverse employment action

against him on the basis of a protected personal characteristic." *Wright v.

Southland Corp.*, 187 F.3d 1287, 1292 (11th Cir. 1999).  A plaintiff may do

so by using direct evidence of discrimination or by using circumstantial

evidence: the *McDonnell Douglas* presumption.   *Id.* at 1293.   Because Whitcomb relies on circumstantial rather than direct evidence, the Court will analyze her claims under *McDonnell Douglas*.

To assist a plaintiff in demonstrating that an inherently subjective decision was nonetheless motivated by improper discrimination, *McDonnell Douglas Corp. v. Green* provides a burden-shifting paradigm designed to create a presumption of unlawful discrimination or, at least, to provide the plaintiff objective, non-discriminatory reasons for an adverse employment action.  411 U.S. 792, 802 (1973).  Applying the *McDonnell Douglas* paradigm to failure-to-promote claims requires a plaintiff to prove the following: (1) membership in a protected class; (2) qualification for and application to the promotion; (3) rejection  from the promotion; and (4) promotion of "other equally or less qualified employees who were not members of the protected class."  *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001).  If the plaintiff establishes these elements, the defendant must produce a "legitimate, non-discriminatory reason for the challenged employment action" or unlawful discrimination is presumed.  *Id.*  Producing a legitimate, non-discriminatory reason sends the case back to the original framework,

but with a plaintiff armed with a reason.  *Wright*, 187 F.3d at 1291.  A plaintiff can then meet the evidentiary burden by showing that the defendant's proffered reason is pretext for unlawful discrimination.  *Id.*

In this case, Defendants argue that Whitcomb cannot establish the second element: qualification for and application to any of the positions prior to Summer 2008.  (Doc. 35 at 9-15.) Whitcomb argues in response that disputed issues of material fact exist concerning the second element: whether the 2005-2006 and 2006-2007 assistant principal slots were subject to a formal selection process, whether the 2007-2008 assistant principal slot existed, whether a 2008 interim principal slot existed, and whether Whitcomb actually applied for the 2008-2009 SCHS and LHS assistant principal positions.   (Doc. 41 at 23.)

      1.    SCHS Assistant Principal 2005-2007.

Defendants agree with Whitcomb that Principal Levy had an informal system for filling assistant principal positions.  "[W]hen there is no formal notice of the job's availability. . . [the employer] has a duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest."  *Carmichael v.*

*Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984).  Defendants

argue that "there is no evidence that Principal Levy had some reason or duty

to consider Whitcomb . . . ."  (Doc. 44 at 4.)

Neither  the  Board  nor  Levy  posted  the  open  assistant  principal

positions.  Levy did not request that interested people let him know of their

interest nor did he conduct interviews.  Rather, each year he selected the

person that expressed unprompted interest in the position.  Whitcomb held

the  credentials  to  serve  as  assistant  principal.   Levy  knew  of  her

qualifications,  testifying  that  he  had  considered  Whitcomb  as  a  future

candidate prior to his decision to retire. (Doc. 42-7 at 21.)  In considering

Whitcomb  a  future  assistant  principal,  Levy  shows  that  he  knew  of  her

possible interest.  Whitcomb, in short, did not have to apply for a job for

which no applications were required, no interviews were conducted and for

which the Principal considered her a future candidate.  Whitcomb thus can

establish the second element of her *prima facie* case for the 2005-2006 and

2006-2007 SCHS assistant principal spots.

     2.     Existence of 2007-2008 SCHS Assistant Principal Position.

Defendant argues that "no one" served as an assistant principal during

2007-2008, preventing Whitcomb from establishing the second element of her failure-to-promote claim.  (Doc. 44 at 4.)  But the evidence suggests that the assistant principal position did exist.  Neither party disputes that Ertha, who had served as assistant principal during the prior school year, also served as interim principal at a junior high school.  Johnny Patrick, a Board member, testified that during his twenty-nine years at SCHS, the school always had an assistant principal.  (Doc. 42-5 at 11.)  Principal Levy testified that Ertha "was on role still as [SCHS assistant principal]." (Doc. 42-7 at 10.)  Whitcomb meets her burden of showing that the 2007-2008 position existed.

>        3.     Existence of 2008 Interim Principal Position.

Defendant argues that Principal Levy's going on medical leave did not create an interim principal position.  Whitcomb argues that the position did exist.  Whitcomb has claimed racial discrimination in conjunction with her non-promotion to certain administrative positions.   No administrator, however, served in Levy's position during the three weeks Levy was out. (Doc. 42-7 at 11.)  Further, no one received compensation to serve as an interim principal.  (Doc. 42-7 at 11.)  SCHS's basketball coach, Alonzo

Sledge, "fill[ed] in" during Levy's absence solely to handle discipline problems, because he had helped out with discipline in the past.  (Doc. 36-2 at 10.)   Whitcomb, in sum, has not established that any administrative position existed to which Defendants denied her promotion during those three weeks.

    4.  Application for 2008-2009 SCHS and LHS Assistant Principal Positions.

   The parties agree that the 2008-2009 assistant principal positions were posted and subject to a formal application process.  The Board posted a vacancy for an assistant principal position on June 18, 2008.  The parties also agree that Whitcomb applied when "the position was not posted or on the [Board's] website . . . ." (Doc. 41 at 7.)

   Whitcomb sent a June 2, 2008 letter applying for the SCHS position: "I have taken the liberty of applying for the position even though it has not been placed upon the official Sumter County Board of Education website." (Doc. 36-21 at 2.) When Whitcomb sent her letter, the assistant principal position at SCHS had always gone to the person who had expressed interest. The evidence indicates that the only other time the position had been

posted on the Board's website, Principal Levy filled the position through informal means.  (Doc. 36-16 at 2.)  The evidence does not show that Whitcomb knew Defendants would subject the 2008-2009 positions to a formal process.  At the time she sent the letter, she was applying in the informal way that had worked for previous assistant principals: expressing interest directly to SCHS.  And though Defendants' argue that Whitcomb did not specify to which position assistant position she wished to apply, neither did Jemison or Woods. Yet Defendants still considered them for the SCHS and LHS assistant principal positions.  Whitcomb, in sum, did not have to apply formally to a position that had historically not been subject to formal procedures, especially when the formalities had not been publicized.

Whitcomb thus meets her *prima facie* case for the 2008-2009 LHS and the 2005-2009 SCHS assistant principal positions.  She fails to make out her *prima facie* case for a 2008 interim principal position.  Defendant concedes that Whitcomb has made out her case for the 2008-2009 SCHS principal position.

B.    Defendants' Reasons for Not Promoting Whitcomb.

Defendants claim that they have "legitimate, non-discriminatory

reasons for not promoting the plaintiff to an administrative position." (Doc. 35 at 17.) Generally, defendants need only to produce, not prove, legitimate, non-discriminatory reasons. *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). But "the defendant's explanation of its legitimate reasons must be clear and reasonably specific." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981).

Defendants produce legitimate, nondiscriminatory reasons. For the 2005-2006 school year, they proffer that Aslean Jones received the assistant principal duties because she expressed an interest in the job, possessed the necessary qualifications, and taught in a department where her occasional absence would not detract from the educational process. (Doc. 35 at 18.) For the 2006-2007 school year, Defendants suggest that Rita Ertha received the assistant principal position because she had previously held the job, and expressed an interest in it. (Doc. 35 at 19.) For the 2007-2008 school year, Defendants propose that no one filled the assistant principal position because Ertha's assignment to another school was temporary. (Doc. 35 at 19.) For the 2008-2009 assistant principal positions, Defendants submit that Melissa Woods and Cynthia Jemison received the positions at SCHS and LHS

respectively because they were better candidates than Whitcomb, based on their qualifications and interviews.

For the 2008-2009 SCHS principal position, Defendants contend that Whitcomb was not the best candidate for the position. They rely on the qualifications of Richard Kelly, the candidate chosen as principal, as proof. Kelly had served over twenty years in administrative positions: middle school principal for fourteen years, assistant high school principal for five years, and junior high principal for three years. In addition, Kelly had taught for nine years, met the minimum qualifications, and was pursuing a doctorate at the time of his interview. In the interview, he scored an average of 89.3%, compared to Whitcomb's 69.6%.

After articulating reasons, the burden then falls to the plaintiff to prove the defendant's reasons are pretext, which creates sufficient evidence of intentional discrimination to survive summary judgment. *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 525 (11th Cir. 1994). A plaintiff may prove pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them

unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).  In short, "establishing pretext is not merely demonstrating that the employer made a mistake, but that the employer did not give an honest account of its behavior." *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1564 (11th Cir. 1995).

Whitcomb argues that Defendants' reasons for selecting Aslean Jones are pretextual because of the informal selection process, Whitcomb's own qualifications, and indications that the math department was not weak.  But Whitcomb does not dispute that Jones expressed interest in the assistant principal job and admits that she never did.   And though Whitcomb met the minimum qualifications, Jones did too.  Moreover, Levy testified that "the math program was kind of weak, and [Whitcomb] was a good math teacher. So [he] doubt[ed] if [he] would have taken her out of the classroom."  (Doc. 36-2 at 16.)  But Jones's "[d]epartment was strong," allowing her to take on the administrative duties.  (Doc. 36-2 at 16.)  A previous assistant principal at SCHS and current Board Member, Johnny Patrick confirms the importance of keeping Whitcomb in the classroom instead of burdening her with additional administrative responsibilities.   Patrick testified that the

administrative duties "did interfere" with classroom responsibilities.  (Doc. 42-5 at 12.)  He also pointed out that the state test scores in math indicated a large weakness in that subject area. (Doc. 42-5 at 19-20.)

No incoherence exists in the Defendants' reasons.  Jones expressed interest; Whitcomb did not.  Jones taught in a strong department; Whitcomb taught well in a department plagued by low test scores.  And Jones met the minimum qualifications.  Whitcomb cannot establish pretext regarding the 2005-2006 assistant principal position.

Whitcomb further argues Defendants' reasons for selecting Rita Ertha are also pretextual, because of Whitcomb's qualifications and the informal selection process.  But Ertha expressed interest in the job and held the same qualifications as Whitcomb.  Most importantly, Ertha had administrative experience, serving as assistant principal in 2004-2005. (Doc. 42-7 at 12.) No incoherence exists in Defendants' reasons for selecting Ertha.

Defendants assert that their hiring no one constitutes the non-discriminatory reason for not promoting Whitcomb to assistant principal during 2007-2008.  She argues that the reason is pretext for discrimination. Whitcomb's argument requires Defendants to have hired no one rather than

hire Whitcomb because of her race.  Defendants would have left the second-highest administrative position in the county high school unfilled for the first time in Board member Patrick's thirty years of experience.  And Defendants would have done so because they did not want to hire a Caucasian woman. Whitcomb's argument, not Defendants' reason appears implausible. Exigencies or uncertainties provide a likelier explanation than animus toward Whitcomb's race for the vacant position.  Primm testified that he moved Ertha, the nominal assistant principal at SCHS, to West End Junior High because the principal there remained on administrative leave during his employment dispute's then-pending appeal.  (Doc. 36-3 at 60.)  Primm chose not to hire someone new because he did not know how long the appeal would take.  (Doc. 36-3 at 60.)  Levy echoes the uncertainty: "She was on role still as Sumter High, but she was just at West End for a short time, supposed to.  So that's why I didn't have an assistant principal there physically during that time."  (Doc. 42-7 at 10.)  Rather than providing cover for discrimination, Defendants' hiring no one reflects uncertainty in staffing. Whitcomb cannot establish pretext.

Whitcomb argues that Defendants offer pretextual reasons for hiring

Woods and Jemison to the 2008-2009 SCHS and LHS assistant principal positions because Whitcomb also applied and was qualified. "[A] plaintiff must show that the disparities between the successful applicant[s'] and [her] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007). Woods and Jemison, like Whitcomb, possess a masters degree and were certified in administration for the 2008-2009 school year. Unlike Whitcomb, both submitted applications to the Board after it had posted the assistant principal positions. Jemison, moreover, had held two previous administrative positions within Sumter County. (Doc. 42-8 at 11.) Woods and Jemison surpassed the requisite qualifications—just as Whitcomb did. This Court cannot say that only an unreasonable person would have chosen Woods and Jemison over Whitcomb.

Finally, Whitcomb argues that Defendants offer pretextual reasons for hiring Richard Kelly as the SCHS principal in 2008. In particular, Whitcomb argues that Defendants failed to consider her superior qualifications,

initially did not consider Kelly, purported to rely on subjective interview scores, and ignored Kelly's lack of certification in Alabama along with his self-professed ignorance "about the Alabama system of education." (Doc. 42-10 at 19.)

The posted notice for the SCHS principalship listed "Valid Alabama Certification" as a "minimum qualification." (Doc. 42-4 at 77.) Kelly still did not have his Alabama certification in 2009. (Doc. 42-10 at 17.) The notice also provided that [a]ll letters of application should be in the Superintendent's Office by May 29, 2008." (Doc. 42-4 at 77.) Kelly testified that he thought he hand-delivered his letter on May 30, 2008. (Doc. 42-10 at 11.)

As he did not meet the above requirements, Defendants did not select Kelly for the initial round of eleven June interviews.   But "because the [candidates] that [Primm] had interviewed earlier were not what [he] was looking for," Kelly was interviewed on July 3. (Doc. 42-3 at 9.)   No inconsistencies exist in Defendants' choosing Kelly for an interview.  Primm testified that Kelly received reciprocity due to his Mississippi certification, negating the need for Alabama certification.  (Doc. 36-3 at 62.)  Indeed, in

addition to listing only "[a] valid state certificate" the Board's policy manual states this caveat about principal qualifications: "Such alternatives to the above qualifications as the Board may find appropriate and acceptable." (Doc. 36-18 at 7.)  When Primm went forward with the second round of interviews, Kelly had the minimum qualifications.  But Kelly had more: twenty-two years as a principal or assistant principal and doctoral-level education.

After the interviews, Primm relied on them to determine the best candidate. Primm attributed Kelly's selection to his interview; Primm attributed Whitcomb's non-selection to her interview. (Doc. 42-3 at 8, 10.) In the interview, Kelly scored an average of 89.3, while Whitcomb scored a 69.6.

Though Whitcomb argues that the interview process was inherently subjective, she fails to show that any subjectivity manifested itself in discriminatory outcomes.  For instance, Whitcomb fails to provide evidence that she scored lower than all African-American candidates or evidence that no Caucasian candidate scored above an African-American one.    The evidence does show that Whitcomb scored poorly among her first round

interview peers.  Defendants' reliance on the interview scores is not pre-textual. If the interviews were a cover for discrimination, Defendants could have chosen a candidate from the first round of interviews.  But they did not.  The scores mattered, not as pretext but as substance, shown by Defendants' interviewing until a candidate with a satisfactory score—not just higher than Whitcomb's, higher on average than all but one other score—came along. (Doc. 36-3 at 49-51.)

In sum, Whitcomb has not shown that Defendants' stated reasons for non-promotion are pretextual. She thus does not carry her burden of showing discrimination.

C.     Retaliation and Whitcomb's *Prima Facie* Case.

Defendants contend that Whitcomb cannot establish a claim for retaliation.  Title VII and § 1981 provide the bases for her retaliation claims, and an identical standard governs both.  *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  A plaintiff must show a (1) causal relationship between (2) engagement in statutorily protected activity and (3) an adverse employment action.  *Id.*  Defendants argue the absence of the first: no causal relation exists between Whitcomb's filing her March 2008

EEOC charges and her non-promotion to assistant principal or principal during June and July 2008. (Doc 35 at 23-24.) Whitcomb's poor interview caused her non-promotion to SCHS principal.

Whitcomb suggests that the temporal relationship between her EEOC filing and her non-promotion to SCHS principal carries her burden of establishing causation. (Doc. 41 at 40.) The temporal proximity between an employer's knowledge of protected activity and an adverse employment action must be very close to establish a *prima facie* case. *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient)). Here, the evidence shows that the EEOC referred Whitcomb's charge to Primm around March 26, 2008. And Primm decided not to promote Whitcomb to principal after her June 2, 2008 interview and before the July 3, 2008 second round of interviews. A gap of two to three months exists. But Whitcomb supports that temporal span with nothing else. Whether a two to three month gap creates sufficient temporal proximity matters little because, assuming without deciding that Whitcomb has proved her *prima facie* retaliation case, she does not carry her burden of showing that

Defendants proffered pretextual reasons for the adverse employment action.  *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999).  As set out in Part B, Defendants proffer that Whitcomb was not the best candidate for the SCHS principalship. The reasons do not constitute pretext.

Though Defendants offered Whitcomb an interview for the SCHS principal position, they did not even consider Whitcomb for the assistant principal positions.  Whitcomb sent a June 2, 2008 application letter to Primm stating her interest in the assistant principal position; Primm recommended Woods and Jemison as assistant principals on July 2, 2008, one day after the deadline for applications.  A two to three month gap exists between the approximate March 26, 2008 EEOC referral to Primm and his decision not to consider Whitcomb for either assistant principal position.  In light of Defendants' pretextual reasons for their failure to consider her, Whitcomb claims a *prima facie* case of retaliation, respecting the assistant principal positions.

Defendants suggest that a failure to apply explains why they did not consider her, arguing that persons cannot apply before the Board announces

a vacancy, that Whitcomb never mentioned the LHS assistant principal position, and that Primm never received Whitcomb's June 2, 2008 letter. But Board members and administrators were aware of her interest.  (Doc. 42-7 at 21; Doc 42-5 at 15.)   The Board had posted the SCHS assistant principal position only once previously and had not used a formal interview process that time.   Whitcomb also suggests that she applied before the position opened because she had upcoming surgery, which could prevent her from applying.   Whitcomb, in addition, held comparable credentials to the two other applicants, both of whom received positions. Neither Jemison nor Woods specified a particular school in their applications. Finally, Whitcomb had failed to garner assistant principal positions in the past because of her failure to show interest in the position.   She showed interest in 2008.   A reasonable jury could conclude that Defendants' reasons are pretextual, meaning that she did apply and showing that Defendants retaliated against Whitcomb's exercising her EEOC rights by failing to even consider her. Summary judgment is thus premature on Whitcomb's claim for retaliation regarding the 2008-2009 assistant principal positions at SCHS and LHS.

      D.     Municipal Liability Under Section 1983.

Whitcomb asserts Section 1983 claims against the Board, even though the statute refers to "every person." 42 U.S.C. § 1983.   Section 1983 provides no substantive rights; it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).   An infringed right must underlie a Section 1983 claim—racial discrimination in this case. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). As shown above, Whitcomb cannot show discrimination.

Even if Whitcomb could show discrimination, the Board argues that she cannot assert Section 1983 claims against it under a theory of municipal liability.   "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy [or custom] with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).   Municipal policy "is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).   Custom "is a practice that is so settled and permanent that it takes on the force of law." *Id.*   The Board contends that Primm does not have final authority to create a policy or

custom, preventing municipal liability from attaching to it.

Whitcomb cites the following provision, contending that it gave Primm the requisite final authority as county superintendent: "The county board of education shall appoint, upon the written recommendation of the county superintendent, all principals, teachers, clerical and professional assistants authorized by the board." Ala. Code § 16-8-23.  This provision mandates that the Board must appoint Primm's recommendations for positions that it creates.  The provision withholds discretion from the Board.  As Board member Patrick testified, "[t]he only time we can vote to hire or fire anyone is it has to be recommended by the superintendent." (Doc. 42-5 at 9.)  Primm possesses the necessary final authority in hiring personnel.  Municipal liability would thus exist.  But by failing to establish any discrimination, Whitcomb has not offered evidence of any policy or custom of the Board that violates federal law.

E.    Qualified Immunity for Primm.

Defendants argue that the defense of qualified immunity protects Primm because his recommending Whitcomb's colleagues for promotion falls within his discretionary authority and does not violate clearly established

law.  (Doc. 35 at 29.)  Conceding that the actions fall with his discretionary authority, Whitcomb argues that Primm's actions do violate clearly established law.  (Doc. 41 at 45.)  As this Court has held above, Primm did not intentionally discriminate against Whitcomb on account of her race.

But the Eleventh Circuit has established a person's right to be free from retaliation after complaining of racial discrimination.  *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1411-13 (11th Cir. 1998); *Marshall v. Daleville City Bd. of Educ.*, No. 05-368, 2006 WL 2056581, at *11 (M.D. Ala. 2006) ("An objectively reasonable public official, therefore, would have known that retaliating against an assistant superintendent for exercising her legal right to file an EEOC charge of discrimination was prohibited by law.")  By failing to even interview Whitcomb for the 2008-2009 assistant principal positions, a reasonable jury could find that Primm violated her clearly established right to be free from retaliation.  Primm is thus not entitled to qualified immunity on Whitcomb's claims of retaliation regarding the 2008-2009 assistant principal positions.

V.    Conclusion.

For the reasons stated above, Defendants' motion for summary

judgment on Plaintiff's claims is GRANTED IN PART.  Defendants' motion for summary judgment is DENIED with respect to Whitcomb's claims of retaliation relating to the 2008-2009 SCHS and LHS assistant principal positions.  A separate order will be entered.

Done this 14th day of January 2011.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
159890